# EXHIBIT A

## AMERICAN ARBITRATION ASSOCIATION
### Construction Industry Arbitration Tribunal

| | |
|---|---|
| DRILL TECH DRILLING & SHORING, INC., <br>     Claimant <br> v. <br> NGC GROUP, INC., <br>     Respondent | AAA Case No. 01-20-0014-1089 |

### FINAL AWARD

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties and dated October 19, 2019, and having been sworn, and having heard the proofs and allegations of the Parties, hereby AWARD as follows:

Before me is a dispute between Claimant, Drill Tech Drilling & Shoring, Inc. ("Drill Tech"), and Respondent, NGC Group, Inc. ("NGC"), arising out of NGC Standard Subcontract Agreement between Drill Tech, as subcontractor, and NGC, as contractor, dated October 19, 2019 ("Subcontract"). The Owner is Acciona Energy USA Global LLC ("Acciona"). Drill Tech's scope of work consisted of constructing 63 PTPC foundations for the Chalupa Wind Project in Rio Hondo, Texas ("Project"). The original Subcontract Price was $3,732,570, and, including agreed change orders, the final price increased to $3,904,944.

In accordance with Section 19.1 of the Subcontract the Final Hearing on the merits was held in Dallas, Texas on December 9, 2024 and continued through December 12, 2024 without objection. Following the conclusion of the Final Hearing the Parties submitted extensive briefing including attorneys' fees proffers, and the hearings were closed on January 31, 2025.

The Parties are represented by experienced and able counsel who zealously advocated the positions of their clients. I have considered the evidence, presentations, arguments and briefs submitted by the Parties and make this Final Award based on the greater weight and preponderance of the credible evidence.

### Factual Background and Claims Overview

The Parties agree that Drill Tech mobilized on October 29, 2019, began its scope work on November 21, 2019, and achieved substantial completion on March 24, 2020, eighteen (18) days ahead of the contractual completion date. The Parties also agree that during construction NGC

supplemented Drill Tech's scope work with its own forces, although they disagree on the economic value of that work. Regardless, it appears undisputed that NGC has paid Drill Tech $1,986,022, or 50% of the original Subcontract Price as amended.

Drill Tech claims that as an initial matter it is entitled to the Subcontract balance of $1,534,922 which includes Drill Tech's calculation of NGC's supplementation of the work. Additionally, it seeks $542,115.94 in standby costs allegedly due to inadequate mix design and resulting delays to the ready-mix concrete, all of which, Drill Tech says, were NGC risk. Thus, the total amount Drill Tech seeks is $2,077,037.94.

In response, NGC takes the position that not only is Drill Tech entitled to no further payments but it, in fact, owes NGC $517,165.94 based on the following allegations:

> Savings of $715,311.68 to Drill Tech by using Continuous Flight Auger ("CFA") instead of the as-bid Augur Pressure Grouted Pile method ("APGD");
>
> Increased cost to NGC of $257,139 for spoil removal generated by the use of CFA;
>
> Liquidated damages of $794,000 for Drill Tech's delay in delivering computer generated logs for each installed anchor to NGC;
>
> Breach of contract damages of $712,869 for failing to indemnify NGC for its costs incurred in defending against Acciona's allegations and clams;
>
> Increased cost to NGC of $72,884.20 for repairs to Drill Tech's work; and
>
> Increased cost to NGC of $32,000 for the value of supplemental work (difference between NGC's calculation of $416,000 and Drill Tech's of $384,000).

**Analysis**

**Drill Tech Claims:**

<u>Subcontract Balance</u>

On its claim for the Subcontract balance, Drill Tech is entitled to $1,534,922 subject to NGC's offsets as addressed below.

<u>Standby Costs</u>

Regarding its proposed Change Orders 3-7 in the amount of $542,115.94 for standby costs, Drill Tech argues that pursuant to Exhibit B.8.u. of the Subcontract NGC was required to provide and pay for the ready-mix grout per Drill Tech's mix design, that Drill Tech repeatedly notified NGC that the grout was unacceptable, that NGC agreed and understood that the grout problem was delaying Drill Tech and that Drill Tech submitted change order requests based upon the impacts to its schedule, production rate and pace. Based on the equipment and labor rates set out in Exhibit B.11. of the Subcontract Drill Tech says it correctly used active, not passive, standby rates because the delays happened when the crews were fully manned and ready to work.

In response, NGC acknowledges that a problem existed but says it's exaggerated by Drill Tech. NGC argues that based on the proper calculation of standby costs as set out in the Subcontract and the contractually required notice requirements the correct amount to which Drill Tech is entitled is $194,001.17 for Change Orders 3-6. As to Change Order 7 in the amount of $45,151.54 NGC argues it has simply no factual basis. In fact, Mr. Hennemuth, Drill Tech's expert witness, when questioned could give no reason why it was even submitted.

I find that it is virtually undisputed that the lack of sufficient and proper grout adversely affected Drill Tech's progress and production rate. The record contains numerous communications sent both by Drill Tech and NGC acknowledging that fact and while it appears to be true that Drill Tech did not notify NGC rigorously in accordance with the Subcontract, the evidence shows that NGC was on actual notice of Drill Tech's complaints and problems with the grout. The evidence also shows that Drill Tech's use of active standby equipment and labor rates was proper. Therefore, I find that Drill Tech is entitled to $465,403.54 for Change Orders 3-6. As to Change Order 7, I do not find that Drill Tech is entitled to its claim of $45,151.54

**NGC's Claims:**

<u>Pile Installation Change</u>

As noted above, NGC claims that Drill Tech's change to the CFA drilling method had two major financial implications: first, it accelerated Drill Tech's production rate to such an extent that Drill Tech enjoyed "savings" in the amount of $715,311.68 and second, it had the opposite effect on NGC by increasing its spoils removal cost by $257,139.

In support of its alleged savings argument, NGC states that it "is contractually entitled to receive an offset and adjustment [to the Subcontract] price…Specifically, NGC has the right to elect and issue a deduction to [Drill Tech] for its actual field costs attributed to 'deleted work' and NGC bargained for the protection of an enforceable pay-if-paid clause", page 19 of NGC's Post-Hearing brief, noting that Acciona claimed a $2.7 million deduction for the reduction of NGC's scope of work resulting from Drill Tech's use of the CFA method.

Drill Tech's responds that (1) its decision to use the CFA method entailed its discretionary means and methods decision approved by the designer of record, NV5, not a reduction in scope, (2) that the Subcontract contained no "savings" clause, (3) Acciona gave up on its attempt to back charge NGC and never withheld any funds for the installation method change and (4), in any event, there was never any savings from the method change.

I find that NGC is not entitled to an offset of $715,311.68 because the switch to the CFA method was a "means and method" issue discretionary with Drill Tech and approved by NGC and its designer, it was not a reduction of scope, the Subcontract did not contain a savings clause and ultimately Acciona gave up on its threat to withhold money from NGC for the drilling method switch.

Regarding its spoils removal claim, NGC argues that it is undisputed that the switch in drilling methods significantly increased the amount of spoils at the jobsite such that NGC spent

$257,311.68 more than it originally budgeted for removal and that, in fact, Drill Tech agreed in an email exchange that NGC was entitled to a reimbursement of "some of the [increased] cost."

In response, Drill Tech points to Subcontract Exhibit B, Section 9.g that specifically excludes from its scope of work "Drill spoils haul-off or disposal." Drill Tech further argues that the email exchange states that Drill Tech would help with "some" undefined amount of the increased cost which was never quantified by NGC. Therefore, the record is factually insufficient to support the claim.

I find that NGC's claim for increased costs for spoil removal fails. It's clear that the Parties excluded "drill spoils haul-off or disposal" from Drill Tech's responsibility. While it is true that after completion Able Cresson of Drill Tech agreed to reimburse NGC for "for some of the cost…" , the Parties never agreed on an amount. So, at best, there was an unenforceable agreement to agree sometime in the future, which never happened. Based on the record before me I deny the spoils removal claim.

### Liquidated Damages

NGC claims it is entitled to 794 days (over 2 years) of liquidated damages ("LD's") credit because (1) Drill Tech agreed to pay LD's in the Subcontract if the rig computer-generated drill logs were not delivered timely as required by Exhibit K to the Prime Contract, (2) it's undisputed they were not and (3) NGC was assessed LD's by Acciona for delays caused by Drill Tech.

Drill Tech responds first that not only did it not delay the Project, but it finished over a week early. Second, in order to correctly assess LD's under Exhibit B Section 8.aa of the Subcontract NGC must prove that a follow on subcontractor had "assumed control, and [begun] uninterrupted construction of that scope, on the foundation site in less days than the duration of [Drill Tech's] pile installation was over the allotted days…Total duration of production piles shall be eighteen working weeks." Third, the reference to Exhibit K in Section 8.aa is only for establishing the quantum of $1,000 day for LD's, not for determining when LD's would be assessed. Otherwise, it would render the language in Section 8.aa meaningless. Thus, using the correct analysis NGC has presented, at best, 48 days of delays.

While the Subcontract provision regarding the assessment of LD's is no model of clarity, based upon the four corners of the contracts and the Parties' communications before and during the work and after substantial completion, I find that their clear intent was that Section 8.aa would control the assessment of LD's, i.e., the key milestone is "pile installation", not the delivery of "rig computer-generated drill logs to NGC." Therefore, I find against NGC for $794,000 in LD's and instead award a credit of $48,000.

### Duty to Defend

NGC claims that Drill Tech breached Section 15.1 of the Subcontract which requires Drill Tech to defend NGC from claims of defective work. In pertinent part, Section 15.1 states that [Drill Tech] shall defend and indemnify NGC…from and against all suits or claims alleging damages, losses and expenses, including reasonable attorneys' fees, attributable injuries to person or damage to

property arising out of or resulting from [Drill Tech's] Work, including all suits and claims that arise during and after construction of the Project, except to the extent that such suits or claims are caused by the negligence or fault of the party seeking indemnity under this Article 15 of any other party under the control of the party seeking indemnity…" In support of its assertion that Drill Tech breached Section 15, NGC points to Acciona's claims of defective pile installation in letters dating back to early 2022 and culminating in Acciona's claims of damage resulting from Drill Tech's work. (Exhibits 14, 18 and 189). Under the eight corners test adopted by the Texas courts, argues NGC, the factual allegations made in the underlying dispute, read together with the contractual language at issue, control the duty to defend, not the ultimate outcome. Therefore, NGC states that based on Acciona's claims in its letters and in the NGC arbitration, Drill Tech's duty to defend was triggered, and its failure and refusal "to honor its obligations [is] why NGC is entitled to recover breach of contract damages in this Arbitration."

Drill Tech counters NGC's argument by stating that since it was ultimately exonerated in the Acciona arbitration, its indemnity obligation under Section 15 was never "triggered". As to its duty to defend, Drill Tech takes the position that, at most, Acciona's claims point to the negligence of NV5, NGC's consultant retained to design the piles that Drill Tech correctly installed, thereby exculpating it from any duty under Section 15. i.e., the negligence of any party over which NGC has control discharges Drill Tech's duty to defend. Additionally, Drill Tech claims that Acciona's complaints do not include "injuries to person or damage to property" and thus, there is no duty to defend.

Under Texas law, Drill Tech's duty to defend encompasses "all suits or claims…arising out of or resulting from [its] work", even if the allegations are "groundless, false or fraudulent". *D.R. Horton-Texas, Ltd. v. Markel International Insurance Company, Limited*, 300 S.W.3d 740, 743 (Tex. 2009). The duty to defend is broader than the duty to indemnify, and in applying the eight corners rule, courts resolve all doubts in favor of the duty to defend, *King v. Dallas Fire Insurance Co.*, 85 S.W.3d 185, 187 (Tex. 2002), and will find a duty to defend even if the allegations do not specifically state facts that bring the case squarely within the contractual language at issue, if a claim potentially comes within those terms. *Heyden Newport Chemical Corporation v. Southern General Insurance Company*, 387 S.W.2d 22, 26 (Tex. 1965).

In accordance with the teaching of these cases, Acciona's claims in its letter demands to NGC in early 2022 and its arbitration allegations of poor pile installation, cracks and chipping in the foundation concrete due to movement of the piles and the failure of Drill Tech's soil anchors were sufficient to trigger Drill Tech's duty to defend NGC. Therefore, I find that NGC is entitled to an offset of $712,884.20

### B5.07 Repair Work

NGC states that it can back charge Drill Tech $72,884.20 for warranty costs it incurred in paying a third party to correct Drill Tech's defective work as per the finding by NV5. Specifically, NGC paid DGT Solutions to remediate inadequate grout pressure at Foundation B5.07 because Drill Tech refused to perform warranty work in violation of Articles 5, 6, 12 and 18.

Drill Tech asserts that under the Subcontract Exhibit 8.p any "comebacks" would be on NGC's account. When it was clear that NGC would not compensate Drill Tech for repairing B5.07, it refused to perform the repair work.

Based on the evidence, I find that NGC is entitled to a credit of $72,884.20 for warranty work Drill Tech refused to do on Foundation B5.07. I further find that Exhibit B, Section 8.p refers to "comeback" work on foundations taken out of sequence and does not negate Drill Tech's duty to repair defective work.

### Work Removed From Drill Tech's Scope

Based on the evidence I find that the correct deduction for supplemental work is $416,000, not $384,00 as proposed by Drill Tech.

### Prompt Payment Interest

Based on the greater weight of the credible evidence, I find in accordance with Texas Property Code Section 28.002(b) that there has been and continues to be a good faith dispute between the Parties. Therefore, I deny the claim for Prompt Payment Act damages.

### Attorneys' Fees

Both Parties have been zealously represented by extremely able counsel who have presented their cases cogently and professionally. Pursuant to Chapter 38 of the Texas Practices and Remedies Code and Rule 48 or the AAA Construction Industry Rules, I award Drill Tech $323,218.10 in attorneys' fees.

### Conclusion

Based on the greater weight and preponderance of the credible evidence, I find as follows:

1. Drill Tech is due its subcontract balance of $1,534,922
2. Drill Tech is due its standby costs of $465,403.54
3. NGC is not entitled to an offset for the change of installation method savings.
4. NGC is not entitled to an offset for increased cost resulting from spoils removal.
5. NGC is entitled to a credit of $48,000 for Liquidated Damages.
6. NGC is entitled to a credit of $712,869 for breach of the duty to defend.
7. NGC is entitled to a credit of $72,884.20 for repair work to foundation B.507.
8. NGC is entitled to a credit of $32,000 for work removed from Drill Tech's scope.
9. Drill Tech is entitled to its attorneys' fees of $323,218.10.

Therefore, Drill Tech is entitled to recover $1,457,790.44 from NGC, plus pre-judgment and post-judgment interest consistent with Texas law and this Final Award.

The administrative fees and expenses of the American Arbitration Association totaling $25,900, and the Arbitrator compensation in the amount of $46,162.50 shall be borne by the Parties as incurred.

This Award is in full settlement of all claims and counterclaims submitted in this proceeding. All claims and counterclaims not expressly granted are hereby denied.

Dated this 3rd day of March, 2025.

_/s/ George E Bowles_____

George E. Bowles, Arbitrator